## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| CHRISTINA HIBBERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-cv-3028 |
| ) | |
| LEO P. SCHMITZ, DEBORAH ) | |
| SIMENTAL, JOANN ) | |
| JOHNSON, JEFFREY ) | |
| JACOBS, JEFFREY KNAUER, ) | |
| ANGES KINDRED-JOHNSON, ) | |
| and MACHARIA FORTSON, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Plaintiff Christina Hibbert has sued several defendants, all of whom are or were employed by the Illinois State Police (ISP), under 42 U.S.C. § 1983, alleging the defendants violated several of her civil rights.  This cause is before the Court on the Motion to Dismiss (d/e [6]) filed by Defendants Leo Schmitz, Deborah Simental, Joann Johnson, Jeffrey Jacobs, and Jeffrey Knauer.  For the reasons set

forth below, the motion to dismiss is GRANTED IN PART and
DENIED IN PART.

## I.    BACKGROUND

The following facts come from the Complaint filed in this case
(d/e [1]) by Christina Hibbert and are accepted as true at the
motion to dismiss stage.  Tamayo v. Blagojevich, 526 F.3d 1074,
1081 (7th Cir. 2008).

Hibbert worked for the ISP from 2001 to 2014, though she was
never a sworn law enforcement officer.  In November 2013, Officers
Agnes Kindred-Johnson and Macharia Fortson covertly installed
video cameras in Conference Rooms B and C of the ISP
headquarters.  Those conference rooms afford ISP employees a
limited amount of personal privacy—the doors have locks—and
employees sometimes use the rooms to place personal phone calls
or to change clothes before working out.

Unaware of the covertly-installed cameras, Hibbert used the
conference rooms to change clothes and to "engage in other
personal matters," and the cameras recorded Hibbert "in a state of
undress."  Compl. ¶¶ 67, 71.  Although the purpose of installing the
cameras was to "establish that [Hibbert] and a co-worker were

engaging in a romantic relationship," the Complaint does not say whether the cameras actually recorded such a liaison.  Id. ¶ 53. Regardless, Officers Kindred-Johnson and Fortson "disseminated the information about Hibbert being nude" to other ISP employees, and the ISP currently maintains a copy of the video images of Hibbert "in a state of undress."  Id. ¶¶ 72, 74.

On May 6, 2014, Director Schmitz filed a complaint with the ISP Merit Board seeking administrative discipline against an ISP officer named Anthony McClure.  Id. ¶¶ 22, 25.  The Complaint suggests, but does not state, that Officer McClure is the second party to the alleged romantic relationship described above.

Prompted by Officers Simental, Johnson, and Jacobs, the ISP Merit Board issued what the Complaint alleges was a "purported subpoena."  The purported subpoena was to be served on Hibbert, and read, "YOU ARE HEREBY NOTIFIED to surrender your personal cellular phone with number [redacted] immediately."  Id. ¶ 27.

Although the ISP did not require Hibbert to carry a cell phone, Hibbert, like many ISP employees, nonetheless carried a personal iPhone, which she had owned since 2012.  Hibbert used her iPhone

for normal purposes: to place and take calls; to text and email family, friends, and others including lawyers, doctors, and counselors; to take and store personal photographs; and to access the internet.

On May 20, 2014, Officer Johnson handed Hibbert the subpoena while Hibbert was at her desk at the ISP headquarters building.  Hibbert indicated that she did not want to turn over her iPhone and asked whether she had to do so.  Officer Johnson responded that Hibbert had no choice in the matter.  Hibbert asked if she could call an attorney first, and a different "ISP official" told Hibbert that she could not and that she needed to turn over the phone immediately.  Id. ¶ 34.

Believing that she had no choice other than to do what she was told, Hibbert handed her iPhone to Officer Johnson. Hibbert was also told to provide the password to her phone, which she understood to be "a direct order."  The Complaint does not identify the person who ordered Hibbert to provide her password.  Hibbert gave Officer Johnson the password.  Id. ¶ 36.

Officer Johnson gave the phone to Knauer, a non-sworn ISP employee, who downloaded a complete digital copy of all of the

information on Hibbert's iPhone, including contact information, private emails, text messages, photographs, financial information, and medical information.  Knauer then gave this digital information to Officers Simental, Johnson, and Jacobs.  The officers returned Hibbert's iPhone, but they retained the digital information.  The ISP currently retains a complete record of the information from the iPhone.  Id. ¶¶ 40–42.

Hibbert's employment with the ISP ended shortly afterward, on July 9, 2014.  Id. ¶ 11.  The Complaint does not state whether Hibbert quit or was fired.

The Complaint raises two claims.  In Count 1, Hibbert claims that the taking and copying of her iPhone was an unlawful seizure under the Fourth Amendment and violated her Fourth Amendment right to privacy.  Hibbert asks the Court: (1) to order ISP Director Schmitz and Officers Simental, Johnson, and Jacobs to return all copies of any information retained from her iPhone and to modify ISP policy to protect ISP employees from future Fourth Amendment violations; (2) to award Hibbert her costs and attorney's fees; and (3) to assess actual and punitive damages against Knauer and Officers Simental, Johnson, and Jacobs.

In Count 2, Hibbert claims that the covert video recording violated her Fourth Amendment right to privacy.  Hibbert asks the Court: (1) to order Director Schmitz and Officer Simental to destroy all copies of any covertly recorded video of Hibbert and to modify ISP policy to ensure such recording does not occur in the future; (2) to award Hibbert her costs and attorney's fees; and (3) to assess actual and punitive damages against Officers Kindred-Johnson and Fortson.

Defendants Kindred-Johnson and Fortson, who are implicated in Count 2 only, filed an answer in response to the Complaint. The other defendants—Knauer, Director Schmitz, and Officers Simental, Johnson, and Jacobs (hereinafter, "Defendants")—have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  They request that: (1) the Court deny Hibbert's requests for injunctive relief in both counts; (2) the Court dismiss Count 1 because the service and execution of an administrative subpoena does not constitute a Fourth Amendment search or seizure; (3) the Court dismiss Count 1 on absolute immunity grounds; and (4) the Court dismiss Count 1 on qualified immunity grounds.

## II.   LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007).  To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving the defendants fair notice of the claims.  Tamayo, 526 F.3d at 1081.

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor.  Id. However, the complaint must set forth facts that plausibly demonstrate a claim for relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action.  Id.

### III.   ANALYSIS

A.   **The Complaint indicates that Hibbert's requests for return of the iPhone information and destruction of the video footage are appropriate prayers for injunctive relief but the Complaint does not establish that Hibbert is entitled to a change to ISP's policies.**

In the Complaint, Hibbert seeks equitable relief in the form of: (1) the return of all copies of any information Defendants obtained from her phone; (2) the destruction of any and all copies of video footage taken in the conference room; and (3) modification of ISP policies such that actions similar to the search of her phone and the videotaping of the conference room are not taken against any ISP employees in the future.

Equitable relief is unavailable except when the legal remedies available to plaintiff are inadequate, such as when the harm to the plaintiff is ongoing or there is a likelihood that the harm will recur. O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."); Janowski v. Int'l Brotherhood of Teamsters Local No. 710 Pension Fund, 673 F.2d 931, 940 (7th Cir. 1982), vacated on other grounds by 463 U.S. 1222 (1983)

("[I]njunctive relief is not appropriate to prevent the possible occurrence of an event at some indefinite future time.").

Defendants argue that they do not plan to do anything with the phone information and the video footage, such that injunctive relief is an inappropriate remedy for Hibbert's "past exposure" to allegedly illegal conduct.  Def. Mem. (d/e [7]) at 4.  Hibbert, on the other hand, argues that she continues to suffer harm by the ISP's continued possession of the personal information from her phone and of the video footage in the form of "stress and emotional distress" from the invasion of privacy.  Compl. ¶¶ 47–48, 76.  The Court finds that Hibbert's claims of ongoing stress due to the continued invasion of privacy sufficiently state ongoing adverse effects to survive Defendants' motion to dismiss.  Although return of the information copied from her phone and destruction of the video footage would not return Hibbert to the *status quo ante*, this Court may order such relief as a partial remedy to Hibbert's claim of ongoing stress caused by ISP's continued possession of such items. See EEOC v. Aerotek, Inc., 815 F.3d 328, 332 (7th Cir. 2016). Defendants' motion to dismiss Hibbert's request for the return of all copies of the personal information from her iPhone and the

destruction of all copies of the video images taken in the conference room is accordingly DENIED.

However, Hibbert can no longer be affected by ISP employee policies because she is no longer an employee.  Because Hibbert is no longer directly affected by ISP policies and actions towards its employees, she does not have a sufficient legal interest to pray for relief in the form of a change to ISP policies.  See McKinney v. Illinois, 720 F. Supp. 706, 709 (N.D. Ill. 1989) (dismissing claim for injunctive relief against plaintiff's former supervisor because plaintiff was no longer employed and therefore alleged harassment was unlikely to recur).  The Court accordingly GRANTS Defendants' motion to dismiss Hibbert's requests for changes to ISP policies in Counts 1 and 2 of the Complaint and DISMISSES said claims.

### B.   The Complaint alleges facts sufficient to constitute search and seizure under the Fourth Amendment.

Count 1 of the Complaint alleges that the taking and copying of Hibbert's iPhone was an unlawful seizure and violated her Fourth Amendment right to privacy.  Defendants argue that Hibbert has failed to state a claim because the facts set forth in the Count 1 do not constitute a search or seizure under the Fourth Amendment.

For the following reasons, Defendants' request for dismissal of Count I for failure to state a Fourth Amendment search or seizure is DENIED.

> i. Hibbert has stated a Fourth Amendment seizure.

Defendants argue that Hibbert has not stated facts constituting a search or seizure because service and execution of a subpoena issued by a government agency, which Defendants call an "administrative subpoena," on a government employee does not implicate the Fourth Amendment.  Hibbert argues that the subpoena was invalid because it was beyond the scope of the Merit Board's statutory powers and because Defendants improperly treated the subpoena as a warrant.  Pl. Mem. in Opp. (d/e [9]) at 8–9; Compl. ¶¶ 29–30.

The Fourth Amendment's protections against unreasonable searches and seizures are enforceable against the states by virtue of the Fourteenth Amendment's Due Process Clause.  Mapp v. Ohio, 367 U.S. 643, 650 (1961).  To establish a Fourth Amendment seizure violation, a plaintiff must show (1) that the defendant's conduct constituted a "seizure," and (2) that the seizure was

"unreasonable."  Carter v. City of Milwaukee, 743 F.3d 540, 543
(7th Cir. 2014).

A seizure occurs when a person's freedom is restrained by
means of physical force or a show of authority, such as a threat of
arrest.  Id.  An officer makes a show of authority in the role of law
enforcement rather than in the role of supervisor.  Driebel v. City of
Milwaukee, 298 F.3d 622, 642 (7th Cir. 2002) ("A seizure occurs
only when a person submits to the show of lawful authority or the
application of physical force by an officer acting in the role of a law
enforcement agent rather than as a public employer or
supervisor.").  As such, a government employer's threat of
employment disciplinary action does not constitute a show of
authority.  Carter, 743 F.3d at 543–44 ("As in the private sector,
public employees must often comply with their supervisors' orders
and can suffer consequences at work for failure to comply. . . . The
Fourth Amendment does not protect against the threat of job loss.");
Caldwell v. Jones, 513 F. Supp.2d 1000, 1008 (N.D. Ind. 2007)
(school district's subpoena requiring employee to appear and testify
at an administrative hearing, coupled with threat of possible
disciplinary action by employer for failure to comply, was "too

feeble" to constitute a Fourth Amendment show of authority because employee had option not to appear at hearing). Additionally, an employer does not violate the Fourth Amendment by serving an unauthorized subpoena on an employee. Id. at 1013 (purportedly unauthorized subpoena issued by plaintiff's employer did not constituted a seizure).

On the other hand, the mere fact that an officer acts pursuant to a subpoena issued by a government employer does not prevent a finding that the officer used a show of authority constituting a seizure; the question is, considering all the circumstances surrounding the encounter, "whether reasonable people in the position of the subordinate officers would have feared seizure or detention if they had refused to obey the commands given by their superior officers.  Carter, 743 F.3d at 544; see also Driebel, 298 F.3d at 642–43 (police officers were not seized when superiors ordered them to answer questions at internal affairs division in the course of a criminal investigation into the officers' actions while on duty because officers were threatened only with employment consequences if they refused).

Here, taking the facts set forth in the Complaint as true, Officer Johnson handed Hibbert an administrative subpoena and told Hibbert that she had to relinquish her phone.  Unlike the plaintiff in Caldwell, Hibbert was served the subpoena by a law enforcement officer rather than by an agency supervisor.  Further, although ISP is a paramilitary organization in which officers must take orders from higher-ranking officers, Hibbert was not a sworn officer.  Compl. ¶ 35 ("The ISP is a para-military organization and its employees are expected to follow orders from sworn officers."); see Carter, 743 F.3d at 543.

However, questions of fact remain about the service of the subpoena and how Defendants obtained Hibbert's iPhone and password.  Without elucidation of the circumstances surrounding the encounter, the allegation that Defendants told Hibbert she had to surrender her phone could indicate a threat of employment discipline or a show of authority signaling that Hibbert was not free to decline to comply.  See Carter, 743 F.3d at 545–46 (supervising officer's statement that supervisee officer could not leave scene until supervising officer patted him down, and accompanying pat-down, was not a seizure due to nature of officer's employment and

because supervising officer did not tell supervisee that he was the subject of a criminal investigation, did not touch supervisee to stop him from leaving, did not read supervisee his rights, and did not threaten arrest).  The Complaint does not allege that Defendants touched Hibbert, threatened her with arrest, read her rights, or stated that she was the subject of a criminal investigation.  On the other hand, the Complaint does not allege that Defendants told Hibbert that the subpoena was pursuant to an investigation into office misconduct or that she could be subject to disciplinary action if she failed to comply.

Because questions of fact remain regarding the circumstances in which Defendants served the subpoena on Hibbert and took her phone, the Court cannot conclude at the motion to dismiss stage that a reasonable employee in Hibbert's shoes would not have feared arrest or detention for failing to comply with the subpoena. Consequently, the Court DENIES Defendants' request to dismiss Count 1 for failure to state a Fourth Amendment seizure.

ii.    Hibbert has stated a Fourth Amendment search.

Hibbert also alleges that Defendants violated her Fourth Amendment right to privacy by copying and maintaining a copy of

the personal information contained on Hibbert's iPhone.
Defendants argue that the Complaint fails to state a Fourth
Amendment search.

To state a Fourth Amendment search, a plaintiff must
establish that the official's action infringed "an expectation of
privacy that society is prepared to consider reasonable." O'Connor
v. Ortega, 480 U.S. 709, 715 (1987) (plurality opinion). To state a
Fourth Amendment violation of privacy claim, the plaintiff then
must demonstrate that the government's invasion of her reasonable
expectation of privacy was unreasonable. Id.

The Complaint alleges that Hibbert had a subjective
expectation of privacy in her iPhone. Compl. ¶ 44. Whether an
employee's expectation of privacy is reasonable is determined on a
case-by-case basis, taking into account a particular office's
practices and procedures. O'Connor, 480 U.S. at 715 ("[T]he
reasonableness of an expectation of privacy . . . is understood to
differ according to context."); Narducci v. Moore, 572 F.3d 313, 319
(7th Cir. 2009) ("Given the great variety of work environments in the
public sector, the question whether an employee has a reasonable
expectation of privacy must be addressed on a case-by-case basis.").

While the operational realities of a public workplace may make

some government employees' expectations of privacy unreasonable,

individuals do not lose Fourth Amendment rights merely because

they work in government rather than in the private sector.

Narducci, 572 F.3d at 319; O'Connor, 480 U.S. at 717.

    The Court finds that the facts as alleged in the Complaint

indicate that Hibbert had a reasonable expectation of privacy in her

phone.  The nature of "smart" phones is that they contain an

immense amount of information about the user.  See Riley v.

California, 134 S. Ct. 2473, 2488–89 (2014) ("Modern cell phones . .

. implicate privacy concerns far beyond those implicated by the

search of a cigarette pack, a wallet, or a purse.").  Much of that

information can be extremely personal, including text messages and

email conversations with loved ones, geographical location data

about the user's movements, purchase history, internet viewing

preferences, and the user's photographs.  Individuals may also use

their smart phones to store important information, including

personal passwords, banking and finance information, and medical

and health care information.  This capacity makes modern cell

phones a cornucopia of personal information, and, accordingly,

society recognizes the reasonableness of the expectation of privacy in one's cell phone.  See id. at 2489–90 ("One of the most notable distinguishing features of modern cell phones is their immense storage capacity. . . . [A] cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record. . . . The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions.").

Indeed, the Complaint alleges that Hibbert's phone contained personal information including communications with friends, family, physicians, private photographs, and personal financial information.  Compl. ¶ 45.  Further, the phone at issue here was Hibbert's personal cell phone, rather than an employer-issued phone.  The phone was also password-protected.  The Complaint further alleges that ISP did not prohibit employees from having their personal cell phones while at work and that most administrative ISP employees, like Hibbert, carried their personal cell phones in the office.  Id. ¶ 44.  The Court finds that the personal nature of smart phones such as Hibbert's iPhone, which was personal and

password-protected and was allowed at work establishes that
Hibbert had a reasonable expectation of privacy in her iPhone, just
as she had a reasonable expectation of privacy in her office desk,
files, etc.  See O'Connor, 480 U.S. at 719 (hospital employee had a
reasonable expectation of privacy in his desk and file cabinets in his
office); Narducci, 572 F.3d at 321 (village employee had a
reasonable expectation of privacy in his phone line at work to be
free from recording by his employer).

By copying the full set of information on the phone,
Defendants infringed on that reasonable expectation of privacy.
The Court accordingly finds that the Complaint sufficiently alleges a
search under the Fourth Amendment.

### C.    Defendants are not entitled to absolute immunity.

Defendants request dismissal of Count 1 on the basis of
absolute immunity.  Quasi-judicial bodies are entitled to absolute
immunity when carrying out duties that are functionally equivalent
to those of a judge or prosecutor.  Heyde v. Pittenger, 633 F.3d 512,
517 (7th Cir. 2011).  Courts take a functional approach in
considering whether the actions performed are judicial or
prosecutorial.  Id.  Defendants contend that the ISP Merit Board

was a quasi-judicial body when it issued the subpoena in this case.
Defendants argue that they therefore are entitled to absolute
immunity when, Defendants allege, they acted to enforce a facially
valid order such as the subpoena.

However, the actions Defendants took to enforce the subpoena
consisted of serving it on Hibbert and making statements to ensure
her compliance, ordering her to provide the phone's password, and
copying the information from the phone.  In those respects, the
nature of Defendants' actions cannot reasonably be interpreted as
those of a judge or prosecutor.  Rather, such actions are the
investigative actions of an executive branch of government, and
thus are not entitled to absolute immunity.  See Hartman v. Moore,
547 U.S. 250, 262 n.8 (2006) (no absolute immunity for prosecutor
for investigatory conduct); Richman v. Sheahan, 270 F.3d 430, 437
(7th Cir. 2001) ("The policies articulated in our quasi-judicial
immunity cases have less force when, as in this case, the
challenged conduct is the manner in which the judge's order is
carried out, and not conduct specifically directed by a judge.").  The
Court accordingly DENIES Defendants' request to dismiss Count 1
on the basis of absolute immunity.

**D.    Defendants are not entitled to qualified immunity.**

Defendants also seek dismissal of Count 1 on the grounds of qualified immunity.  Defendants are shielded from civil damages claims by qualified immunity if they did not violate a clearly established constitutional or statutory right.  Viilo v. Eyre, 547 F.3d 707, 709 (7th Cir. 2008).  Whether Defendants are entitled to qualified immunity turns on whether the right Defendants allegedly violated was sufficiently clear such that no reasonable officer would have found the conduct to be lawful and whether the Complaint sufficiently alleges that Defendants violated that right.

A right is clear if it provides reasonable notice to government officials that certain conduct violates the constitutional right. Narducci, 572 F.3d at 318.  To give such notice, the right at issue must be particularized with regard to the circumstances with which the official was confronted.  Dibble v. Quinn, 793 F.3d 803, 808 (7th Cir. 2015) ("The right allegedly violated must be established not as a broad general proposition but in a particularized sense so that the contours of the right are clear to a reasonable official.") (internal quotations marks omitted).  The right may not be articulated as a broad proposition; the formulation must have sufficiently narrow

contours such that a reasonable official would understand that his actions violated that right.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Reasonable notice does not require that the exact action at issue has previously been held unlawful, so long as its unlawfulness is "apparent."  Id.  ("[I]n the light of pre-existing law the unlawfulness must be apparent."); Hope v. Pelzer, 536 U.S. 730, 741 (2002) ("Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with 'materially similar' facts.").

In this case, the particularized right at issue in Count I is Hibbert's right to be free from Defendants' taking her personal smart phone pursuant to an administrative subpoena, when the officers serving the subpoena said Hibbert had to relinquish the phone, denied her request to speak with her attorney prior to complying, and said that Hibbert must immediately comply, and then made a complete digital copy of the entire contents of the phone.  Yet, the Court is unaware of existing case law that addresses these particular circumstances.  Nonetheless, the Court

finds that the relevant caselaw made the unlawfulness of the facts pled in Count I of the Complaint clear.

Defendants argue that any right to be free from an administrative subpoena for a personal cell phone was unclear because no existing case so holds.  However, such a formulation of the right at issue fails to take into account the manner in which the officers served the subpoena and the purpose of the search.

It was clearly established at the time of the seizure of the phone that, while a threat of disciplinary action by an employer does not rise to the level of a seizure, service of an administrative subpoena can rise to the level of a Fourth Amendment seizure if the officer uses a show of authority such that the individual does not feel free to refuse.  Carter, 743 F.3d at 543–44; Driebel, 298 F.3d at 641–42.  Giving Hibbert the inference that she had to surrender her phone because she reasonably feared arrest or detention, Defendants were on notice that officers who threaten a government employee with arrest have conducted a seizure even if they also have an administrative subpoena.

It was also clear that the scope of a warrantless workplace search must be reasonably related to the purpose of the search.  A

government employer does not need a warrant for a work-related search; such searches need only be reasonable in the circumstances. O'Connor, 480 U.S. at 725–26. For the invasion to have been reasonable, it must have been "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 726.

In City of Ontario, California v. Quon, in finding that a police department's review of text messages made on department-issued pagers was not a violation of the Fourth Amendment, the Court explained that the fact that the search was limited to text messages sent during working hours and to text messages sent on employee's government-issued pager during a two-month span contributed to the reasonableness of the search. 560 U.S. 746, 762–63 (2010) (legitimate purpose of search, an audit of employee pager messages to determine propriety of per-month character limit, limited expectation of privacy in government-issued pager, and tailoring of scope of search supported finding that search was reasonable). On the other hand, in Narducci, the Seventh Circuit found that recording every phone call for a six-year period, with no notice to employees, made the scope of the search unreasonably broad in

relation to the search's purpose, to monitor use of department phones for personal calls and instances of abusive customers. 572 F.3d at 321.

The Complaint does not allege any purpose for the search in this case. Because the purpose of the search remains a question of fact, the Court cannot conclude that Defendants did not conduct an unreasonable search by copying the entire contents of Hibbert's phone. If, as implied by the pleadings, the purpose of the search was to investigate workplace misconduct related to an office romance, Defendants were on notice that failure to limit the search to certain types of data, such as communications with certain individuals or made during certain time periods, violates the Fourth Amendment.

Finally, it was well-established that the warrant exception for work-related searches only applies if the purpose of the search was in fact work-related. O'Connor, 480 U.S. at 722–23. However, the Complaint does not allege that Defendants copied Hibbert's phone pursuant to a work-related purpose, and yet the Complaint alleges that Defendants did not have a warrant for the actions set forth in Count 1. Compl. ¶ 31. Defendants were on notice that warrantless

work-place searches required a work-related purpose.  From the facts pled in the Complaint, the Court cannot conclude that Defendants did not search Hibbert's phone pursuant to a work-related purpose.

From the facts pled in the Complaint, the Court cannot conclude that Defendants did not violate a clear constitutional right and were entitled to qualified immunity.  Defendants' request for dismissal of Count 1 on the basis of qualified immunity is accordingly DENIED.

## IV.  CONCLUSION

For the reasons above, Defendants' motion to dismiss (d/e [6]) is GRANTED IN PART and DENIED IN PART.  Specifically:

(1)     The motion to dismiss is DENIED with respect to Hibbert's requests in Counts 1 and 2 for injunctive relief in the form of returning all copies of the information from her iPhone and destroying all copies of the video recordings taken of Hibbert in the conference rooms;

(2)     The motion to dismiss is GRANTED with respect to Hibbert's requests in Counts 1 and 2 for injunctive relief in the form of changes to ISP policy; and

(3)     The motion to dismiss is DENIED with respect to

Hibbert's request in Count 1 for damages arising out of

the alleged Fourth Amendment violations.

Hibbert's request for damages in Count 2, which the motion to

dismiss does not address, also survives.

ENTERED:  January 5, 2017

FOR THE COURT:                 s/ Sue E. Myerscough
                               SUE E. MYERSCOUGH
                               UNITED STATES DISTRICT JUDGE